**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VIAD CORP d/b/a Exhibit/Giltspur, A Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 08-CV-6706 |
| ANNE HOUGHTON, | ) ) | District Judge Robert M. Dow, Jr. |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

On November 21, 2008, Plaintiff Viad Corp ("Viad") filed a one-count complaint alleging that Defendant Anne Houghton ("Houghton") breached a provision contained within Viad's Management Incentive Plan when she left Viad's employment and took a job with a competitor. Both parties moved for summary judgment [26, 38]. On February 26, 2010, the Court granted Plaintiff Viad's motion for summary judgment [26] and denied Defendant Houghton's motion [38]. On March 26, 2010, Defendant Houghton filed a motion for reconsideration [53] of the Court's February 26, 2010 order. For the reasons stated below, Defendant's motion [53] is respectfully denied.

**I.     Background**

The facts in this case were chronicled in the Court's Memorandum Opinion and Order of February 26, 2010 [48]. Therefore, the Court only briefly recites them here. On July 21, 1997, Plaintiff Viad Corp hired Defendant Anne Houghton as a senior designer for one of its business segments, Exhibitgroup. Viad provides services to exhibition organizers and exhibitors, and Exhibitgroup's business ranges from servicing exhibitors at a trade show (or entities that have a

1

private function in relation to a trade show) to providing design services for private corporate functions.

Exhibitgroup promoted Houghton several times, from Senior Designer to Creative Director of the Chicago division and eventually to Senior Vice President of Design and Creative, a role that she performed for the last three years of her employment with Exhibitgroup. In that role, Houghton supervised the company's team of creative directors and designers and, among other things, had budget responsibilities. She worked primarily in providing design services for "Exhibit Services," as opposed to working in "Exposition Management."

Exhibitgroup paid Houghton a base salary of $175,000. In addition to her base salary, Houghton participated in Viad's voluntary Management Incentive Plan (the "Plan"). The 2007 Plan's stated purpose was to provide key senior executives with an incentive to achieve goals set forth under the Plan. Under the terms of the Plan, if Houghton went to work for a competitor and provided services to the competitor that were "directly concerned" with the services that she performed during her last two years of employment or about which she had confidential information, she was required to return any payout she received under the Plan. In March 2008, Houghton received a payout of $102,000 under the 2007 Plan. Six months later, Houghton resigned from Viad and began working for The Freeman Companies ("Freeman").

Exhibitgroup and Freeman compete in the exhibit and events design industry. Like Viad, Freeman divides its business into segments, including Exposition Management Services and Exhibit Services. Houghton testified that Exhibitgroup and Freeman are competitors, that they both sell design services to their clients, and that her current job with Freeman, as with her job at Exhibitgroup, involved the sale of design services to clients. Houghton Dep. at 45:13-46:10.

On October 3, 2008, Viad demanded repayment of the $102,000 payout made to Houghton under the 2007 Plan. Houghton refused, and Viad filed a one-count complaint in an attempt to recover the payout. On February 26, 2010, the Court entered summary judgment in favor of Viad and against Houghton and ordered Houghton was required to return any payout she received under the Plan. The Court concluded that (i) the services that Houghton provides to Freeman are "directly concerned" with the services that she performed for Viad and (ii) the clause in the Plan requiring Houghton to forfeit her payout is not an unreasonable restraint on competition.

## II. Legal Standard on Motion for Reconsideration

A court may alter or amend a judgment when the movant "clearly establish[es]" that "there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). In regard to the "manifest error" prong, the Seventh Circuit has elaborated that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

While the Federal Rules of Civil Procedure allow a movant to bring to a court's attention a manifest error of law, it "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And because the standards for reconsideration are exacting, our court of appeals has stressed that issues

3

appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

**III. Analysis**

Houghton's motion for reconsideration challenges the Court's ruling in two respects: (i) Houghton argues that the Court erred in concluding that her new job is "directly concerned" with the services she provided to Viad; and (ii) she contends that the Court erred in holding the Plan's forfeiture provision enforceable.

**A. Houghton's Affidavit**

Before getting to Houghton's main arguments, the Court briefly addresses Houghton's contention that the Court accepted Viad's position that Houghton's affidavit testimony should be disregarded. In support of her argument that her duties for her new employer (Freeman) did not violate the non-compete agreement, Houghton contends that the Court, in rendering its summary judgment opinion, disregarded her affidavit testimony regarding the services she now performs. Houghton mischaracterizes both what the Court said and what the Court considered in ruling on the motions for summary judgment.

As set forth in the Court's opinion granting summary judgment for Plaintiff, during her deposition, Houghton was asked about the identity of her one client at Freeman, and Houghton refused to provide this information. Houghton did discuss the nature of the services that she is performing at Freeman and provided examples of the work that she does at Freeman, both of which the Court considered in ruling on the motions for summary judgment. However, Houghton did not reveal the identity of the client and foreclosed specific questions about the exact services that she performed for that client. In a subsequent affidavit, Houghton set forth additional information regarding her service to the one Freeman client for which she admitted

4

working.  In its opinion, the Court determined that to the extent Houghton refused to provide information during her deposition, and then made statements in her affidavit that *contradicted* her deposition testimony or provided information that she was unwilling to provide previously (when Plaintiff's counsel would have been able to question her regarding this information), the Court would not consider the affidavit in ruling on the summary judgment motions.  To the extent that Houghton's affidavit did not contradict her deposition testimony, it was considered by the Court in ruling on the motions for summary judgment.  By proceeding in that fashion, the Court engaged in a straightforward application of settled Seventh Circuit law.  See, *e.g.*, *LaFary v. Rogers Group, Inc.*, 591 F.3d 903, 908 (7th Cir. 2010) (holding that a party "cannot defeat a motion for summary judgment by 'contradict[ing] deposition testimony with later-filed contradictory affidavits'"); *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009) ("The district court also disregarded affidavits submitted by [Plaintiffs] because they 'directly contradict[ed]' their deposition testimony.  This, too, was appropriate."); see also Feb. 26, 2010 Mem. Opinion and Order, at 4-5 & n.3 (collecting additional pertinent case law from the Seventh Circuit).

### B. Houghton's New Job

Under the terms of the Plan, if Houghton went to work for a competitor and provided services to the competitor that were "directly concerned" with the services that she performed during her last two years of employment or about which she had confidential information, she was required to return the payout.  In her motion for reconsideration, Houghton claims that the Court "misapprehended [her] position regarding why her conduct does not violate the forfeiture provision."  Houghton contends that the Court did not credit her assertion that the services she performs for her new employer are different because she is working in the exposition side of the

5

industry, an area in which she now claims she had "absolutely no involvement while working for Viad." Specifically, Houghton argues that because her job at Freeman requires that she oversee the entire exposition (as a general contractor would oversee an entire project), in lieu of working on individual exhibits (which she likened to a subcontractor), these new services are not "directly concerned" with the services that she performed for Viad.[1]

The Court did not misapprehend Houghton's position; rather, the Court specifically rejected this very argument for why the services that Houghton performs in her new job are not "directly concerned" with the services that she performed for Viad: "Whether she works on one exhibition or several exhibits, she specifically testified that the design services she provides at Freeman are what her work 'was concerned with' at Exhibitgroup. In both instances, she was in a supervisory role providing design services to clients in the exposition industry." Feb. 26, 2010 Mem. Opinion and Order at 7. In concluding that the services that Houghton provides to Freeman are "directly concerned" with what she did at Exhibitgroup, the Court accepted Houghton's assertions that she now oversees an entire exposition instead of designing (or supervising the design of) individual exhibits. What the Court was unwilling to do was accept Houghton's argument that the specifics of her current position – admittedly not identical to her duties at Exhibitgroup – removed her new job from the category of services "directly concerned" with the services that she performed for Viad. While the scale of her work may have changed, Houghton remains in a supervisory role providing design services to clients in the exposition industry. Thus, viewing the facts in the light most favorable to Houghton, her current job with

---

[1] In her reply brief, Houghton abandons this argument and focuses on the reasonableness of the restraint at issue. In fact, she characterizes her decision to go to Freeman as "her desire to practice the only trade known to her," an assertion that plainly undermines the argument made in her opening brief – and, indeed, throughout this litigation – that her new duties are "far different" than the services she provided at Viad. See Def. Reply at 7.

Freeman, as Houghton herself testified, is "directly concerned" with what she did at Exhibitgroup.

C.      **Reasonableness of the Plan's Restriction**

Having found that Houghton violated the Plan's competitive activities provision, the Court then addressed whether it believed Illinois courts would enforce the repayment provision. Houghton argues that the Court erred because it did not find that the enforcement clause was "reasonably necessary to protect a legitimate Viad business interest." In her brief, Houghton specifically maintains that the Court "did not address whether Viad had a legitimate business interest to protect." Def. Mem. at 4. In support of that assertion, Houghton contends that the employer *must* show that the former employee acquired trade secrets or other confidential information through her employment and subsequently tried to use it for her own benefit.

Houghton's argument misconstrues both the Court's ruling and the parties' posture at summary judgment. The Court's ruling was not that Viad's legitimate business interest is to protect confidential information. In fact, the Court explicitly stated that both parties agreed that Houghton did not acquire knowledge of trade secrets and that Viad has no evidence that Houghton used or attempted to use confidential information as that term is used in the Plan. See Feb. 26, 2010 Mem. Opinion and Order at 3. Clearly, the Court's ruling was not based on the provision in the Plan that dealt with confidential information (as both parties *agreed*, for purposes of summary judgment, that this was not an issue). Therefore, Houghton's argument is both puzzling and unavailing.

Perhaps realizing that the confidentiality argument lacks merit, Houghton's reply brief focuses on her argument that the Court did not identify a legitimate business interest of Viad's that the Plan protected. Conceding for purposes of the motion for reconsideration that *Tatom v.*

*Ameritech Corp.*, 305 F.3d 737, 744 (7th Cir. 2002), supplies the proper standard when reviewing the enforceability of a forfeiture clause, Houghton maintains that the Court misconstrued and misapplied the holding of *Tatom*. Those arguments already were advanced by Houghton in the summary judgment briefing and rejected by the Court in its opinion. Because judicial opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure" (*Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)), "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling." *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005).

Nevertheless, in the interest of clarity, the Court observes that, contrary to Houghton's assertion, the Court did discuss at length in its prior opinion whether Viad had a legitimate business interest in need of protection:

> In response to Viad's insistence that that the bonus was more like a stock option than a wage, Houghton points to dicta in *Tatom* that distinguishes between stocks options and bonuses: "Stock options, in contrast to other types of regular and bonus compensation, give an employee the right to acquire an ownership interest in a company; that interest in turn gives the employee a long-term stake in the company and supplies him an incentive to contribute to the company's performance." 305 F.3d at 745. However, because Houghton already received a healthy salary from Exhibitgroup and her bonus was based on company, not individual, performance, the rationale underlying this dicta supports Exhibitgroup's, rather than Houghton's, position. The "bonus" was not "regular compensation" (*Id.*); to the contrary, it was awarded as part of a voluntary program and came with a string explicitly attached – namely, repayment to the company in the event that Houghton went to work for a competitor. Undoubtedly, Exhibitgroup wanted to provide its key employees with an incentive to stay put and to reward employees for loyalty. Houghton accepted this special compensation, in addition to her $175,000 salary, knowing that she would be required to return it if she violated the competition provision. The bonus was not the ordinary fruits of her every day labor; rather, it was "special" compensation predicated on more than Houghton's day-to-day job responsibilities.
>
> ***

> An agreement provision under which an employee who joins a competitor forfeits a bonus does not have the makings of a traditional, disfavored covenant not to compete, because it does not prevent post-termination employment, but only discourages it by working a forfeiture of an economic advantage. This forfeiture contract leaves Houghton free to make a living as she chooses. She accepts the money and refrains from competition or she negotiates a salary and bonuses with the competitor to exceed the loss that she takes in abiding by the forfeiture clause. Such a choice does not appear to threaten loss of livelihood. See, *e.g.*, *Schlumberger Technology Corp. v. Blaker*, 859 F.2d 512, 516 (7th Cir. 1988). The Court assumes that Illinois would not enforce the agreement if there were a danger that Houghton would be made a pauper and become a dependant of the Illinois Department of Welfare because she must choose between competing with Exhibitgroup and losing her incentive award. But any such danger is not present on these facts. Nor is this a situation in which a company seeks to recoup a bonus paid to an employee whom it fired without cause; again, Illinois may be disinclined to enforce that kind of agreement.
>
> \*\*\*
>
> A forfeiture clause does not deprive the public of the benefits of competition when, as in this case, Houghton was able to go into competition despite the clause, and the effect of the clause did not impoverish Houghton, who likely took Freeman's offer only because it compensated for the benefits she had to forfeit upon leaving Viad. "An offer like the one made to [Houghton] – sometimes called 'golden handcuffs' – is not a plausible way to monopolize an industry." See *Schlumberger*, 859 F.2d at 517. The restrictive clause in the Plan did not prevent Houghton from working in her field; instead, it exacted a certain cost on her – of which she had advance notice in agreeing to participate in a voluntary incentive program – for exercising her right to compete. See *Spitz v. Berlin Industries, Inc.*, 1994 WL 194051, at \*3 (N.D. Ill. May 13, 1994).

Feb. 26, 2010 Mem. Opinion and Order at 10-12. In short, because the clause at issue does not appear to be an unreasonable restraint on competition, the Court opined then – and reaffirms today – that the Illinois courts would enforce the terms of the Plan if an identical lawsuit were filed in state court.

**IV. Conclusion**

For the reasons stated above, the Court denies Defendant Houghton's motion for reconsideration [53].[2]

Dated: June 22, 2010                    _____
                                         Robert M. Dow, Jr.
                                         United States District Judge

---

[2] Because an issue remained pending concerning the award of interest, the Court did not enter judgment at the time that it placed its ruling on the parties' summary judgment motions on the docket. After taking additional briefing from the parties [see 49, 51], the Court issued a minute order [60] yesterday resolving the interest issue. Because that decision resolves all issues as to all parties in this case, a final judgment will be entered on the docket today in accordance with Fed. R. Civ. P. 58.